IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL L. NEGRON,** | : | CIVIL ACTION NO. 1:CV-05-2207 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **SUPERINTENDENT GRACE OF SCI HUNTINGDON, et al.,** | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) in which Nathaniel L. Negron, ("Negron"), challenges his Pennsylvania state convictions. For the reasons set forth below, the petition will be denied.

### I.  Statement of Facts

Negron pled guilty to a plethora of charges under seven different criminal action numbers in Lebanon County, Pennsylvania. The facts of each action, which are set forth below, have been extracted from the Court of Common Pleas of Lebanon County's opinion denying Negron's petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 PA.C.S.A. § 9541, *et. seq.*

> Action Number 2002-10329
> On August 17, 2001 . . . [Negron] and Encanasion set their victim, Anthony Mingledough on fire. They accomplished this by tossing gasoline on Mingledough, lighting a match, and throwing it as [sic] his feet. Immediately thereafter, Mingledough was engulfed in flames, at which time [Negron] and Encanasion fled the scene. Mingledough spent 110 days in the hospital, unconscious and unrecognizable, with severe burns that consumed

over seventy-percent of his body. These burns eventually resulted in death.

Action Number 2002-11182
[Negron], with his co-Defendant Encanasion, escaped from the Lebanon County Correctional Facility where they were being held awaiting trial for Anthony Mingledough's murder.

Action Number 2001-11491
On February 14, 2001, [Negron] and others assaulted Joseph Ruiz-Roman while at Northeast Park, in Lebanon County. [Negron] repeatedly kicked Roman, causing bodily injury that facilitated treatment at the Good Samaritan Hospital.

Action Number 2001-11492
On February 27, 2001, in Lebanon County, [Negron] unlawfully took a Nissan Pathfinder 2000 belonging to Digital Imaging Solution Corp. (Charles Kinloch) with intent to deprive the owner thereof.

Action Number 1999-11205
[During a traffic stop on July 30, 1999], [t]he odor of alcohol was detected on [Negron's] breath, and he admitted consuming alcohol. . . . Results of [Negron's] blood test showed a . . . Blood Alcohol Content of .072%. [Negron] was nineteen at the time of this incident, which is under the legal drinking age of twenty-one.

Action Number 2000-10200
[During a traffic stop on December 7, 1999], [u]pon smelling alcohol on [Negron's] breath, the officer asked [Negron] had any alcoholic beverages and he stated no. [Negron] agreed to a Preliminary Breath Test and the results were positive. Subsequently, his Blood Alcohol Content was determined to be .033%/. [Negron] was nineteen at the time of this incident, which is under the legal drinking age of twenty-one.

Action Number 2001-11611
On August 25, 2001, . . . , Defendant Negron and his brother Isaac Negron, shot Luis Beltram and William Diaz. In the course of the shooting, the Defendant forced Beltram to enter Diaz's residence with intent to commit a felony. After entering Diaz's residence, the Defendant and Isaac Negron demanded money from Diaz while displaying a firearm. Additionally, the Defendant

>       attempted by physical menace to put Patrolman Jeffrey Marley of the Lebanon County Police Department in fear of imminent serious bodily injury while in the performance of his duties.

(Doc. 13-2, pp. 4-6). Negron pled guilty on December 19, 2002, and, on December 20, 2002, was sentenced to an aggregate sentence of forty to one hundred years imprisonment in a state correctional facility. (Id. at p. 7).

Following sentencing, he filed a timely appeal raising the issues of whether his guilty plea was knowing, intelligent and voluntary and whether he received ineffective assistance of counsel. In April 2003, the trial court issued a Supplemental Opinion finding the guilty plea to be knowingly, intelligently and voluntarily entered. (Doc. 13-2, p. 8). On appeal, the superior court affirmed the trial court's opinion on the issue of the guilty plea. (Doc. 13-3). With respect to the ineffective assistance of counsel claim, because the trial court had not conducted a review on the record, the claim was dismissed without prejudice to Negron's right to raise it in collateral proceedings. (Doc. 13-3, p. 4).

Negron filed a timely PCRA on May 10, 2004, raising ineffective assistance of counsel claims, speedy trial violations, abuse of discretion in imposition of fines, and insufficient evidence to support the restitution order, *inter alia*. The PCRA court denied his petition on November 8, 2004. (Doc. 13-2). Each of the issues was pursued on appeal. The superior court affirmed on September 19, 2005. (Doc. 15). Negron filed this federal habeas petition on October 28, 2005. (Doc. 1).

## II. Claims Presented in Federal Petition

In the instant petition, Negron raises the following issues: ineffective assistance of trial counsel; imposition of excessive fines/restitution; and violation of his right to a speedy trial.

### A. Ineffective Assistance of Counsel

He claims that his trial attorneys were ineffective in failing to advise him of the elements of each of the offenses for which he was pleading guilty. The superior court found as follows:

> As to the first issue, that trial counsel was ineffective in failing to advise him of the elements of the offenses and of the Commonwealth's burden, we note "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." Commonwealth v. Hickman, 799 A.2d 136, 141 (Pa.Super. 2002). We also note that to be entitled to post-conviction relief, [Negron] must establish the issues were not previously litigated. See 42 Pa.C.S.A. § 9543(a)(3). An issue has been previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. Id., § 9544(a)(2). On direct appeal, this Court considered [Negron's] allegation that *the trial court*, (not counsel), during the plea colloquy, failed to recite on the record the elements of the crimes, so that [Negron] was not fully apprised of the offenses to which he was pleading guilty, and thus his plea was not given knowingly, intelligently, or voluntarily. We found the trial court adequately informed [Negron] of the offenses with which he was charged, so that [Negron] entered a knowing, intelligent, and voluntary guilty plea. As stated above, to prevail on this issue of ineffectiveness with regard to his plea, [Negron] would have to prove that counsel's alleged failure to inform him of the elements of the crimes resulted in the entry of an involuntary or unknowing plea. The issue of whether his plea was knowing and voluntary already has been litigated and we determined that it was. Further, [Negron] would have to prove he suffered prejudice by counsel's alleged failure in this regard. We already

>have found that the trial court adequately informed him of the elements of the offenses. Accordingly, we fail to see any prejudice.

(Doc. 15 , pp. 9-10). During the oral plea colloquy, Negron indicated that he discussed all of his cases with his attorneys and that counsel had apprised him of the elements of the offenses, the facts necessary to prove the elements, and his available defenses. (Id. at p. 10) . He also indicated that he understood all of the questions on the written colloquy and gave honest answers, including that he understood the Commonwealth's burden at trial. (Id.).

### B.     Imposition of Excessive Fines/Restitution

Negron challenges the imposition of $15,750 in fines and $9,696.87 in restitution arguing that they are excessive and were imposed without a judicial finding of his ability to pay. With respect to the fine, in relying on the pertinent statute, 42 PA.C.S.A. § 9726, as well as whether the amount of the fine was "constitutionally disproportionate" to the offenses he committed, (Doc. 15, pp. 23-24)(citing Commonwealth v. Lebo, 713 A.2d 1158, 1164 (Pa. Super. 1998), the superior court concluded during the PCRA appeal as follows:

>We conclude the amount of the fines is not disproportionate, but rather, is very fair. The court noted that [Negron] was sentenced on seven separate action numbers, which included thirty-three felony offenses. [Negron's] possible fines totaled $1,090,000.00. [Negron's] sentence of $15,750 is but a small fraction of that amount.

(Doc. 15, pp. 23-24).

The superior court also reviewed the order of restitution and concluded that it was supported by the record.

> Restitution was ordered is [sic] at trial court docket 2002-10329. In that case, [Negron] and another man, poured a flammable liquid on the victim, and ignited the liquid with a match, causing severe injuries from which the victim died. [Negron] was ordered to pay restitution in the amounts of $2021.40 and $260. See Docket Number 2002-10329, No. 37. At docket number 31, the Crime Victim's Compensation Board (CVC) requested $2021.40 for the victim's funeral expenses. Trial court docket 2002-10329, No. 31. At docket number 30, the victim's family member requested a small amount for the victim's grave which was not covered by the CVC. She also requested reimbursement for transportation and phone calls to the hospital. Trial court docket 2002-10329, No. 30.

(Doc. 15, p. 25).

### C.    **Speedy Trial Violation**

Negron contends that the trial court erred by not dismissing the charges in case number 1999-11205. The superior court concluded as follows:

> As for the timeliness of the trial at trial court docket number, 1999-11205, the record reveals the following. The complaint was filed on October 21, 1999. Docket Number 1999-11205, Record No.1. [Negron] was released on bail. Id. Pursuant to Rule 600(A)(3), therefore, the trial was to commence no later than 365 days from the date the complaint was filed. Pa.R.Crim.P. 600(A)(3). As a condition of his release on bail, agreed to appear at all subsequent proceedings as required. Docket Number 1999-11205, Record No. 1. An arraignment was scheduled for February 23, 2000. Docket Number 1999-11205, Record No. 3. [Negron] failed to appear at the hearing. His bail was therefore revoked and a bench warrant issued. Docket Number 1999-11205, Record No. 4. The next activity on the docket is on September 14, 2001 at which time [Negron] applied for public defender services. Certainly, [Negron] should not benefit from his failure to appear for a court hearing and his violations of his conditions of bail. Accordingly, we find that, viewing the facts in the light most favorable to the Commonwealth as the prevailing party, [Negron] was "unavailable" and therefore the time from February 23, 2000 until September 14, 2001 is properly excluded from the calculation pursuant to Pa.R.Crim.P. 600(C)(3)(a). Next, on October 25, 2001 [Negron] executed a waiver of his Rule 600 rights, to continue the

> case until the April 1, 2002 trial term. Docket Number 1999-11205, Record No. 7. On April 16, 2002, [Negron] executed a second waiver of his Rule 600 rights to continue the case until the June 3, 2002 trial term. Docket Number 1999-11205, Record No. 11. On July 11, 2002, [Negron] issued a third waiver of his Rule 600 rights until the August 5, 2002 trial term. Docket Number 1999-11205, Record No. 12. All time during which [Negron] waived his Rule 600 rights is also excluded from calculation. Pa.R.Crim.P. 600(C)(2). He then entered his guilty plea on December 19, 2002. There can be no doubt that given the excludable time, [Negron] was brought to trial within 365 days as required by Rule 600.

(Doc. 15, pp.16-18).

### III.  Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was "contrary to" federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Id.; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).

### A. Ineffective Assistance of Counsel

Negron argues that the state court's adjudication of his ineffective assistance of counsel claim involved an unreasonable application of the legal standard and constituted an unreasonable determination of the facts in light of the evidence presented. (Doc. 1, p. 5).

To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense. See Strickland v. Washington, 466 U.S.

668, 687 (1984).[1]  In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

The superior court utilized the following standard in considering Negron's claim that trial counsel were ineffective for failing to advise him on the record, or within a written plea statement, of the elements of each of the offenses for which he was pleading guilty:

> PCRA Section 9543(a)(2)(ii) provides that the only cognizable claims of ineffectiveness in the PCRA context are those which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Further, to be entitled to PCRA relief based on allegations of counsel ineffectiveness, a petition must prove: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance. Commonwealth v. McGill, 574 Pa. 574, 585, 832 A.2d 1014, 1020 (2003).  In order to establish prejudice, a petitioner must prove there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Commonwealth v. Kimball, 555 Pa. 299, 308, 724 A.2d 326, 331 (1999).

---

[1] The performance and prejudice prongs of Strickland may be addressed in any order that the court deems appropriate, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

(Doc. 15, pp. 8-9).  The above standard complies with the standards set forth by the Supreme Court.  Negron fails to cite to a single case in support of his argument that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.   Hence, he is not entitled to relief on this ground.

In evaluating this issue in accordance with the above standard, the superior court noted that the underlying claim of whether the guilty plea was knowing, intelligent and voluntary was previously litigated on direct appeal, and it was concluded that the trial court adequately informed Negron of the offenses with which he was charged, so that he entered a knowing, intelligent, and voluntary guilty plea.[2]  (Doc. 15, pp. 9-10).  Thus, the underlying substantive claim lacked arguable merit.  Also, because Negron was adequately informed of the elements of

---

[2] On direct appeal, the superior court stated the following:

> Based on a review of the record before us, we find that the trial court adequately informed [Negron] of the offenses for which he was charged so that he could enter a knowing, intelligent, and voluntary guilty plea.  During proceedings, the trial court recited each information, count by count, then asked whether [Negron] understood the charges, to which he consistently replied "[y]es."  (N.T., 12/19/02, at 7,8, 10-13).  Prior to reciting the charges contained in the informations, the trial court informed [Negron] that "[it would] not go through every specific detail but enough to advise [Negron]" of the offenses with which he was charged.  (Id. at 5).  In light of the totality of the circumstances, we refuse to find that the trial court erred because it did not describe with specificity the elements of every offense.

(Doc. 13-3, pp. 3-4).

the offenses, no prejudice was found.  The court further stated that in both his oral and written plea colloquy, Negron indicated that counsel had discussed the elements of the offenses the Commonwealth would have to prove and the facts needed to prove the elements.  There is no indication that this conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

    **B.**    **Imposition of Excessive Fines/Restitution**

Negron argues that the trial court imposed excessive fines in the nature of a $15,750 fine and a restitution amount of $9,696.87, and did not consider his ability to pay in violation of the Eighth Amendment prohibition of cruel and unusual punishment.  "The Eighth Amendment provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'"  Roper v. Simmons, 543 U.S. 551, 560 (2005).[3]  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality."  United States v. Bajakajian, 524 U.S. 321, 334 (1998). The Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime.  Rummel v. Estelle 445 U.S. 263, 271-72 (1980); see, e. g., Weems v. United States, 217 U.S. 349, 367; Ingraham v. Wright, 430 U.S. 651, 667, (dictum); Trop v. Dulles, 356 U.S. 86, 100 (1958) (plurality opinion).  The amount of

---

    [3] The provision is applicable to the States through the Fourteenth Amendment.  Roper, 543 U.S. at 560 (citing Furman v. Georgia, 408 U.S. 238, 239 (1972) (per curiam); Robinson v. California, 370 U.S. 660, 666-67 (1962); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463, (1947) (plurality opinion)).

the fine must bear some relationship to the gravity of the offense that it is designed to punish. Bajakajian, 524 U.S. at 334 (citing Austin v. United States, 509 U.S. 602, 622-23 (1993)).

In addition to relying on the applicable statute, 42 PA.C.S.A. § 9726, which required the court to take into account Negron's ability to pay, financial resources, and the nature of the burden the payment would impose, the court considered whether the amount of the fines was "constitutionally disproportionate" to the offenses Negron committed. (Doc. 15, p. 23) (citing Commonwealth v. Lebo, 713 A.2d 1158, 1164 (Pa.Super. 1998). In concluding that the amount of the fine was not disproportionate, the court noted that Negron was "sentenced on seven separate actions numbers, which included thirty-three felony offenses. [Negron's] possible fines totaled $1,090,000.00. [Negron's] sentence of $15,750 is but a small fraction of that amount." (Id.). The analysis employed by the superior court, which included the concept of constitutionally proportionality, was in compliance with clearly established Federal law, as determined by the Supreme Court of the United States.

Inasmuch as he attempts to argue that the amount of the fine was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, the record indicates to the contrary. As aptly noted by the superior court, the trial court considered his limited ability to pay:

> "[P]ursuant to the statutory mandate, in imposing its sentence upon [Negron], it considered [Negron's] limited ability to pay, and thus ordered that [Negron] pay only a fraction of the potential fines. Also in compliance with the statute, the court also ordered that the sentence of restitution be paid before the

12

> fines to ensure that the fines imposed would not prevent [Negron] from paying restitution. Trial Court Opinion, at 23-24. The court complied with the statutory mandates and we find no error in the PCRA court's determination on this issue."

(Doc. 15, p. 24).

Negron fares no better in arguing that the amount of restitution constituted an excessive fine. The superior court set forth the following:

> "Restitution applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable." Commonwealth v. Wright, 722 A.2d 157, 160 (Pa.Super. 1998). "In computing the amount of restitution, the sentencing court 'shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate.'" Id., citing 18 Pa.C.S.A. § 1106(c)(1). "Because restitution is a sentence, the amount ordered must be supported by the record; it may not be speculative or excessive." Id.

(Doc. 15, pp. 24-25). Restitution was imposed in the case where Negron doused the victim with a flammable liquid, set him on fire and fled the scene. The victim was caused severe injuries, endured a lengthy hospital stay and ultimately died. The restitution amount that was imposed included compensation for medical and funeral expenses.

Negron fails to convince the court that the restitution amount is constitutionally disproportionate. Further, all indications are that the amount is supported by the evidence of record. Accordingly, Negron fails to meet his burden of establishing that the decision concerning the amount of restitution was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was

13

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### C. Speedy Trial Violation

Negron contends that the length of delay in criminal action number 1999-11205, from the October 21, 1999 filing of the complaint, to the entry of the guilty plea in December 2002, "represents an excessive delay" in violation of the Sixth Amendment speedy trial clause. (Doc. 1, p. 7). Specifically, he states that he was prejudiced by the delay in bringing him to trial because three witnesses, who would have established his actual innocence, became unavailable. In support of this argument, Negron relies on the United States Supreme Court case of Barker v. Wingo, 407 U.S. 514 (1972). In Barker, the Supreme Court identified four factors to determine whether the delay constitutes a speedy trial violation: length of delay, reason for the delay, defendant's assertion of his right, and prejudice to the defendant. Id. at 530.

The superior court never reached the issue of a violation of the speedy trial act because it was determined that Negron was brought to trial within the time frame established by the Pennsylvania speedy trial rule. As noted above, there were significant time periods that were excluded from the requirement that the trial shall commence no later than 365 days from the date on which the complaint is filed. (Doc. 15, pp. 14-17 )(quoting PA.R.CRIM.P. 600). Specifically, Negron failed to appear for his arraignment on February 23, 2000. His bail was revoked and a bench warrant for his arrest was issued. (Doc. 15, p. 16). According to the docket, he did

14

not surface again until September 14, 2001.  Because he was considered "unavailable" pursuant to PA.R.CRIM.P. 600(C) during this time period, the days were excluded from calculation.  Thereafter, he signed three consecutive waivers of his Rule 600 rights.  Any time during which a waiver is executed is also excluded from calculation.  PA.R.CRIM.P. 600(C)(2).  The court concluded that "[t]here can be no doubt that given the excludable time, [Negron] was brought to trial within 365 days as required by Rule 600."  (Doc. 15, p. 17).

Although Negron claims to have been prejudiced by the delay, he does not dispute the fact that the above time periods were properly excluded from the speedy trial calculation.  Nor does he provide any evidence to controvert the superior court's findings.  He is therefore not entitled to relief on this claim.

## IV.   Conclusion

Based on the foregoing determination that Negron's claims are meritless, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

                                                /s/ Christopher C. Conner
                                                CHRISTOPHER C. CONNER
                                                United States District Judge

Dated:        May 25, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL L. NEGRON,** | : | **CIVIL ACTION NO. 1:CV-05-2207** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **SUPERINTENDENT GRACE OF SCI HUNTINGDON, et al.,** | : | |
| Respondent | : | |

## ORDER

AND NOW, this 25th day of May, 2006, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

3. There is no basis for the issuance of a certificate of appealabilty. See 28 U.S.C. § 2253(c).

                                          /s/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge